FILED
2009 JUL 28 PM 4:56
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LORENA G. BOUTARI, JAMES R. CABANISS and wife PATSY N. CABANISS, ANGELITA FLORES, GURVIS GUILLORY and wife BEATRICE GUILLORY, MARGARET HONEYCUTT, RITA HONEYCUTT, MARK JOHNSON and wife DEVON JOHNSON, LEROY W. LONG, DELORES MARTINEZ, MARTIN R. MENDOZA and wife EVA MENDOZA, BETTY JOE MESCHACK, CHARLES SCHREINER IV and wife MARY HELEN SCHREINER and THAWATCHAI THONGSONGCHAROEN and wife SOMNUEK BOOSMONGKOL, Plaintiffs | § | |
| | § | SA09CA0608 FB |
| | § | Civil Action No. |
| vs. | § | |
| JP MORGAN CHASE BANK, N.A., AURORA LOAN SERVICES, LLC, OCWEN LOAN SERVICING, LLC, M&T MORTGAGE CORP., AND WELLS FARGO HOME MORTGAGE, INC. d/b/a AMERICA'S SERVICING, Defendants. | § | |

**COMPLAINT**

LORENA G. BOUTARI, JAMES R. CABANISS and wife PATSY N. CABANISS, ANGELITA FLORES, GURVIS GUILLORY and wife BEATRICE GUILLORY, MARGARET HONEYCUTT, RITA HONEYCUTT, MARK JOHNSON and wife DEVON JOHNSON, LEROY W. LONG, DELORES MARTINEZ, BETTY JOE MESCHACK, MARTIN R.

MENDOZA and wife EVA MENDOZA, CHARLES SCHREINER IV and wife MARY HELEN SCHREINER, and THAWATCHAI THONGSONGCHAROEN and wife SOMNUEK BOOSMONGKOL ("Plaintiffs"), complain of JP MORGAN CHASE BANK, N.A., AURORA LOAN SERVICES, LLC, OCWEN LOAN SERVICING, LLC, M&T MORTGAGE CORP., AND WELLS FARGO HOME MORTGAGE, INC. d/b/a AMERICA'S SERVICING ("Defendants"), and for cause of action show:

## I. JURISDICTION

1. This Court has jurisdiction based on the diversity of the parties, and because the amount in controversy exceeds $75,000 for the plaintiffs. 28 U.S.C.A. §1332.

## II. VENUE

2. Venue is proper in the Western District of Texas because each of the Defendants resides and does business in this district and is subject to personal jurisdiction in this district. 28 U.S.C. §1391.

## III. PARTIES

3. Plaintiffs are residents of Texas.

4. Defendant, JP MORGAN CHASE BANK, N.A., is a foreign corporation doing business in Texas; it may be served with process through its registered agent for service, CT Corporation, 350 North Saint Paul St., Dallas TX 75201.

5. Defendant, AURORA LOAN SERVICES, LLC is a foreign corporation doing business in Texas; it may be served with process through its registered agent for service, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 701 Brazos, Ste. 1050, Austin, Texas 78701.

6. Defendant, OCWEN LOAN SERVICING, LLC is a foreign corporation doing business in Texas; it may be served with process through its registered agent for service, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 701 Brazos, Ste. 1050, Austin, Texas 78701.

7. Defendant, M&T MORTGAGE CORP. is a foreign corporation doing business in Texas; it may be served with process through its registered agent for service, CT Corporation, 350 North Saint Paul St., Dallas TX 75201.

8. Defendant, WELLS FARGO HOME MORTGAGE, INC. d/b/a AMERICA'S SERVICING is a foreign corporation doing business in Texas; it may be served with process through its registered agent for service, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 701 Brazos, Ste. 1050, Austin, Texas 78701.

## III. FACTS COMMON TO ALL PLAINTIFFS

9. Effective January 1, 1998, for the first time Texans were able to use the equity in their homestead to obtain home equity loans. In 1998 and 1999, each Plaintiff entered into home equity loan transaction with Long Beach Mortgage, a company based in California. Each Defendant is a holder, or the agent of the holder, of a Texas home equity loan originated by Long Beach Mortgage and made to each of the Plaintiffs in 1998 or 1999. At the time Long Beach Mortgage made the loans to the Plaintiffs, Long Beach Mortgage was not authorized by the State of Texas to make home equity loans to Texans. The penalty for making unauthorized loans is forfeiture of all principal and interests paid and to be paid to the holder of the loan.

10. Effective January 1, 1998, the Texas Constitution enabled only "authorized lenders" to make home equity loans to Texans.

11. Article 16, §50(a)(6)(A) through (Q) of the Texas Constitution sets forth the numerous strict requirements for a valid home equity loan in Texas. Article 16,§50 (a)(6)(P) requires in pertinent part that the home equity extension of credit be "made by one of the following...

i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or of the United States;

ii) a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans; or

iii) a person licensed to make regulated loans, as provided by statute of this state;..."

12. The other eligible home equity lenders (sellers/financers of homes, family members and state regulated mortgage brokers) are not pertinent to this suit. See sections (P)(iv), (v) and (vi).

13. Plaintiffs will show the Court that as of the time of the loans in question, Long Beach did not fit under any authorized category; and that the holder of a loan originated by an unauthorized lender "shall forfeit all principal and interest of the extension of credit," since "... the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision ...." Article 16 §50)(a)(6)(Q)(xi).

14. Additionally, because Long Beach was not an authorized home equity lender, the liens purportedly held by Long Beach and its successors in interest are void, the borrower is not personally liable, and the lender is left without personal recourse. *Adams v. Ameriquest Mortgage,* 307 B.R. at 553 (citing Doody v. Ameriquest, 49 S.W.3d 342, 345-46 (Tex. 2001)).

15. Long Beach Mortgage Company was not a "bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States," under section (P)(i) above; rather, Long Beach was a business corporation located in California and chartered under Delaware law.

16. Long Beach Mortgage Company was not "a person approved as a mortgagee by the United States government to make federally insured loans." under section (P)(ii). This provision refers to those approved to make mortgages by the U.S. Department of Housing and Urban Affairs ("HUD"). Long Beach was only an investing mortgagee under HUD and Federal Housing Administration ("FHA") rules.

17. Additionally, 24 CFR §§202.6-202.9 (2005) sets forth the hierarchy of federally approved mortgagees, as follows:

a) Supervised and nonsupervised mortgagees are authorized to originate federally insured loans (§§202.6(a), 202.7(a));

b) Loan correspondent mortgagees are authorized to originate federally insured loans with a qualified sponsor (§202.8(a)(2));

c) Investing mortgagees are not authorized to originate federally insured loans (§202.9(a)). Investing mortgagees are not required to meet a net worth requirement as are the other categories. (§202.9(a)).

*See* HUD Regulations, Classes of Lenders and Mortgagees, 24 CFR §202.6 et seq. (2005).

18. Long Beach was only authorized to be an investing mortgagee, and thus was not "a person approved as a mortgagee by the United States government to make federally insured loans." under section (P)(ii) of the home equity loan amendment.

19. Additionally, the regulations interpreting § P(ii) of the Texas Constitution further support Plaintiffs' interpretation of this provision, stating that "the Department of Housing and Urban Development (HUD) approves lenders to make federally insured loans. A HUD-approved mortgagee is entitled to make equity loans." See, State of Texas Regulatory Commentary on Equity Lending Procedures (1998). The Texas Supreme Court has followed the Regulatory Commentary in its interpretation of other provisions of the Texas Home Equity Loan Amendment. *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 357 (Tex.2000). See also, *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 712 (Tex.App.-Waco 2002, no pet.).

20. Similarly, §153.17(2) of the regulations on home equity lending in Texas provide that "a HUD–approved mortgagee is a person approved as a mortgagee by the United States government to make federally insured loans. Approved correspondents to a HUD-approved mortgagee are not authorized lenders of equity loans unless qualifying under another section of (a)(6)(P)." See, 7 Texas Administrative Code, Chapter 153, Home Equity Lending.

21. Here, Long Beach was not authorized as a HUD "loan correspondent," but was only an "investing mortgagee" under the HUD rules. Long Beach was not even allowed to submit applications for federally insured loans, much less make federally insured loans. See 24 CFR §§ 202.8(a)(2), 202.9(a). Thus, Long Beach was two levels removed from the HUD-approved status necessary to make valid home equity loans in Texas.

22. Although the state regulations did not act as a "safe harbor" for lenders until January 2004, they nevertheless are persuasive as the Texas Finance Commission's interpretations, authorized by the state legislature. See *In re Box,* 3245 B.R. 290 (Bkrtcy. S.D. Tex. 2005); §11.308, Texas Finance Code (2003) (authorizing binding regulations).

23. Long Beach has claimed that it was authorized to make Veterans Administration ("V.A.") loans, and that this authority meets the Constitutional requirement of a person approved by the federal government "to make federally insured loans." However, the V.A., unlike HUD, does not issue federal loan insurance. The V.A. only guarantees up to 80% of a qualified veteran's loan. A lender approved to underwrite V.A. guaranteed loans to qualified veterans is not a lender approved by HUD to originate federally insured loans to the general public. The "plain language" and "literal text" of section (P)(ii) points to the HUD-approved mortgagees authorized to originate, or make, federally insured loans.

24. The five Texas state agencies in charge of interpreting the home equity amendments to Art 16, §50, (Office of Consumer Credit Commissioner, Department of Banking, Savings and Loan Department, Credit Union Department, Texas Finance Commission) all have defined "person approved as a mortgagee by the United States government to make federally insured loans" to mean "HUD-approved mortgagee." See, Regulatory Commentary of January 6, 1998, p. 9, ; 7 TAC §153.17, p. 876.

25. This interpretation follows from the fact that only HUD-approved mortgagees make federally insured loans. The regulations are careful to exclude "[a]pproved correspondents to a HUD-approved mortgagee" since they cannot make federally insured loans. 7 TAC §153.17. Long Beach is only an "investing mortgagee" with even less authority than an approved HUD correspondent, and is not authorized to make home equity loans in Texas.

26. Furthermore, the Texas Commentary and Regulations on the Home Equity Loan Amendment only authorize HUD-approved mortgagees to make home equity loans in Texas. See, Regulatory Commentary of January 6, 1998, p. 9. According to the ancient maxim of statutory construction *"inclusio unius est exclusio alterius,"* the inclusion of HUD-approved

mortgagees implies the exclusion of all other entities as approved home equity lenders. See, e.g., Steering Committee for Cities Served by TXU Elec. v. Public Util. Comm., 42 S.W.3d 296, 302 (Tex. App.-Austin 2001, no pet.)("...[W]e presume that the purposeful inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent under the principle of statutory interpretation '*inclusio unius est exclusio alterius.*'").

27. Furthermore, Long Beach was only authorized to submit loans to the VA for prior approval (except interest rate reduction loans that are not delinquent), and could not make VA guaranteed loans without such prior approval. In order to obtain automatic authority to make VA loans, Long Beach would have to have substantial VA lending experience and expertise as well as substantial working capital and net worth. On the contrary, there are no asset or personnel requirements to qualify for prior approval VA lender status. Thus, Long Beach's "prior approval" VA lender status is not analogous to HUD-approved mortgagee status (with its strict asset and personnel requirements), and does not give Long Beach the authority to make home equity loans. Id.

28. It would have been very easy for the Texas Legislature or the Texas Finance Commission to have included, in the Texas Home Equity Loan Amendment and its regulations, language giving low-level VA lenders such as Long Beach the authority to make home equity loans or federally guaranteed loans to veterans. This language is not there, and must be presumed to have been excluded for a purpose. "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W. 2nd 535, 540 (Tex. 1981).

**Long Beach is not authorized under section (P) (iii).**

29. Finally, as of February 1998, Long Beach Mortgage Company, had no "license to make regulated loans, as provided by statutes of this state," under §50(a)(6)(P)(iii). Long Beach did not obtain such license until October 6, 1999, after it had merged into Washington Mutual Bank.

## IV. FACTS PERTAINING TO INDIVIDUAL PLAINTIFFS

### Lorena G. Boutari

30. Plaintiff Lorena G. Boutari is the owner and resident of her homestead located at 5076 Nash Dr., The Colony, Texas, 75056 and legally described as, lot 26, Block 48, Colony No. 10, Denton County, Texas. She entered into a home equity loan transaction with Long Beach Mortgage on February 16, 1999 under Long Beach loan number 8124265 which resulted in a lien against her homestead. The loan (now #0041769761) is currently held by JPMorgan Chase Bank, N.A. doing business as Washington Mutual or WaMu, or JPMorgan Chase Bank, N.A. is the agent for the holder of the loan.

### James R. and Patsy N. Cabaniss

31. Plaintiffs James R. and Patsy N. Cabaniss are the owners and residents of their homestead located at Box 8 Turtle Lane, The Woodlands, Texas, 77380, and legally described as Lot 4, Block 1, The Woodlands, Village of Grogan's Mill, Section 32, Montgomery County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on August 26, 1999, under Long Beach loan number 8428559, which resulted in a lien against their homestead. The loan (now # 0038791422) is currently held by Ocwen Loan Servicing, LLC, or is being serviced by Ocwen as agent for the holder of loan.

### Angelita Flores

32. Plaintiff Angelita Flores is the owner and resident of her homestead located at 1122 Kentucky Ave., San Antonio, Texas 78201 and legally described as Lot 19, Block 12, NCB 2070, City of San Antonio, Bexar County, Texas. She entered into a home equity loan transaction with Long Beach Mortgage on March 8, 1999 under Long Beach loan number 8135733 which resulted in a lien against her homestead. The loan is currently held by JPMorgan Chase Bank, N.A. doing business as Washington Mutual or WaMu, or JPMorgan Chase Bank, N.A. is the agent for the holder of the loan.

**Gurvis and Beatrice Guillory**

33. Plaintiffs Gurvis and Beatrice Guillory are the owners and residents of their homestead located at 1526 Country Road 182, Liberty, Texas 77575 (formerly Route 2, Box 376E, Liberty, TX 77575) and, legally described by metes and bounds in Document 89004636, Vol. 1276, pages 25-27 of the Real Property Records of Liberty County, Texas. They entered into a home equity loan transaction with Long Beach Mortgage on December 17, 1998 under Long Beach loan number 7962467 which resulted in a lien against their homestead. The loan (now #0041711979) is currently held by JPMorgan Chase Bank, N.A. doing business as Washington Mutual or WaMu, or JPMorgan Chase Bank, N.A. is the agent for the holder of the loan.

**Margaret and Rita Honeycutt**

34. Plaintiffs Margaret and Rita D. Honeycutt are the owners and residents of their homestead located at 7118 Emory Oak Lane, Dallas, Texas 75249, legally described as Lot 45, Block G/8608 of the Woods, 6th Section, City of Dallas, Dallas County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on March 26, 1999, under Long Beach loan number 8188575, which resulted in a lien against their homestead. The loan (now

#1134004328) is currently held by Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing America's Servicing or is being serviced by Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing America's Servicing as agent for the holder of the loan.

### Mark and Devon Johnson

35. Plaintiffs Mark and Devon Johnson are the owners and residents of their homestead located at 3204 Robin Rd., Plano, Texas 75075, legally described as Lot 4, Block 1, Cloisters No. 8, Collin County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on December 21, 1998, under Long Beach loan number 8037848, which resulted in a lien against their homestead. The loan is currently held by JPMorgan Chase Bank, N.A. doing business as Washington Mutual or WaMu, or JPMorgan Chase Bank, N.A. is the agent for the holder of the loan.

### LeRoy W. Long

36. Plaintiff LeRoy W. Long is the owner and resident of his homestead located at 11917 Prairie Hill Dr. Hearne Texas, (formerly known as 208 Prairie Hill Dr.) legally described by metes and bounds in Document 0984816, Vol. 722, pages 194-202 of the Real Property Records of Robertson County, Texas. He entered into a home equity loan transaction with Long Beach Mortgage on October 20, 1998 under Long Beach loan number 7861933 which resulted in a lien against his homestead. The loan (now #0041680844) is currently held by JPMorgan Bank, doing business as Washington Mutual, or JPMorgan Bank is the agent for the holder of the loan.

### Dolores Martinez

37. Plaintiff Dolores Martinez is the owner and resident of her homestead located at 6727 Buckley, San Antonio, TX, 78239, and legally described as Lot 25, Block 3, NCB 2070, City of San Antonio, Bexar County, Texas. She entered into a home equity loan agreement with

Long Beach Mortgage on June 25, 1999, under Long Beach loan number 8316861, which resulted in a lien against her homestead. Long Beach was merged with Washington Mutual, whose assets were subsequently bought by JPMorgan Chase Bank. JPMorgan Chase bank currently is the holder of the lien against Ms. Martinez's home, or is the agent for the holder.

**Betty Jo Meshack**

38. Plaintiff Betty Jo Meshack is the owner and resident of her homestead located at 1284 Cedar Haven Avenue, Dallas, Texas 75216, and legally described as Lot 20, Block F/3737 of Cedar Haven, Second Installment, City of Dallas, Dallas County, Texas. She entered into a home equity security loan with Long Beach Mortgage on March 26, 1998, under Long Beach loan number 7544448, which resulted in a lien against her homestead. The loan (now #0008767956) is currently held by Aurora Loan Services, or is serviced by Aurora as agent for the holder of the loan.

**Martin and Eva Mendoza**

39. Plaintiffs Martin and Eva Mendoza are the owners and residents of their homestead located at 308 Bartlett St., Rogers, Texas 76569, and legally described as Lot 3, Block 3, of A.B. Ater 1st Addition, City of Rogers, Bell County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on March 20, 1998, under Long Beach loan number 7547078, which resulted in a lien against their homestead. The loan (now # 0030523484) is currently held by Ocwen Loan Servicing, LLC, or is being serviced by Ocwen as agent for the holder of loan.

**Charles and Mary Helen Schreiner**

40. Plaintiffs Charles and Mary Helen Schreiner are the owners and residents of their homestead located at 11 Rock Creek Dr., Salado, Texas 76571 and legally described as Tract 8,

according to the plat of record in Cabinet A, Slide 45-A, City of Rock Creek, Bell County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on April 8, 1998, under Long Beach loan number 7564131, which resulted in a lien against their homestead. The loan (now #0008770521) is currently held by Aurora Loan Services, or is serviced by Aurora as agent for the holder of the loan.

**Thawatchai Thongsongcharoen and wife, Somnuek Boosmongkol**

41. Plaintiffs Thawatchai Thongsongcharoen and wife Somnuek Boosmongkol are the owners and residents of their homestead located at 2110 Meadow Glen Drive, Garland, TEXAS, 75044 and legally described as Lot 23, Block 1, 1st Section, City of Garland, Dallas County, Texas. They entered into a home equity loan agreement with Long Beach Mortgage on February 24, 1998, under Long Beach loan number 7490246, which resulted in a lien against their homestead. M&T Mortgage Corporation is the current holder of the lien against their homestead, or is the agent for the holder.

## IV. CAUSES OF ACTION

42. With respect to the current holder of their loan originally made by Long Beach Mortgage, each Plaintiff seeks a declaratory judgment that the loan is void, a judgment removing the cloud on their title by canceling the lien against their homestead, a judgment forfeiting all sums to be paid pursuant to the terms of the loan, and a money judgment for restitution of all sums paid on the void loan. Stated differently, Plaintiffs seek the remedy of the Texas Constitution, Art. 16, §50(a) (6), Part P and Q, i.e. a declaration that the lien purporting to secure the Texas home equity loans in question is void, and an order compelling each Defendant to "... forfeit all principal and interest of the extension of credit", including refund of all amounts paid.

43. With respect to the current holders and servicers of Plaintiffs' loans originally made by Long Beach Mortgage, such holders' and servicers' conduct in collecting on a void loan constitutes a breach of § 392 of the Texas Finance Code and § 17 of the Texas Business and Commerce Code, and the common law tort of unreasonable debt collection. Such actions are a proximate and producing cause of Plaintiffs' damages, in an amount equal to the amount collected on such void loans plus all charges assessed on such loans plus mental anguish damages. On information and belief, such Defendants' wrongful actions were committed intentionally, knowingly, and maliciously, thus making such Defendants liable to Plaintiffs for additional damages and mental anguish damages under § 392 of the Texas Finance Code and § 17 of the Texas Business and Commerce Code and punitive damages under the common law. Plaintiffs seek reasonable and necessary attorney fees, pursuant to § 392 of the Texas Finance Code, § 17 of the Texas Business and Commerce Code, and § 38 of the Texas Civil Practice and Remedies Code. All conditions precedent to recovery have been complied with.

44. The Texas Constitution is a part of every Texas contract. Defendants violated the Texas Constitution, and thus the contracts between the parties, by collecting on the home equity loans in question without constitutional authority. Plaintiffs seek attorney fees pursuant to § 38.002, TEX. CIV. PRAC. & REM. CODE.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that on final trial each Plaintiff have, as against the holders and servicers of the loans against their respective homesteads:

1. A judgment declaring the lien on their home void, and an order forfeiting all principal and interest to be paid on the void loans, and awarding to Plaintiffs the sum of all principal and interests paid on the void loans.
2. A judgment awarding each Plaintiff actual, additional, and punitive damages.
3. Reasonable attorney's fees.
4. Prejudgment and post judgment interest as provided by law;
5. Costs of suit; and
6. Any other relief, at law or in equity that the court deems proper.

Respectfully submitted,

DARBY RILEY
SBN: 16924400
CHARLES RILEY
SBN: 24039138
320 Lexington Avenue
San Antonio, Texas 78215
(210) 225-7236
(210) 227-7907 Telecopier
ATTORNEYS FOR PLAINTIFF